No. 34.—HENRY G. PETERMAN, plaintiff in error, *vs.* PHILIP WATKINS, defendant in error.

[1.] Where a rule *nisi* was granted upon a petition to the Court of Ordinary, praying that an administrator might be directed to execute titles in pursuance of a bond given by his intestate, which rule required publication in a newspaper instead of "in the public places of the county," as the Statute prescribes, and the rule was published in the said paper only, and titles were afterwards directed to be made by the Court, were so executed, and there was an acquiescence in the proceeding for more than twenty-five years: *Held*, that under these circumstances, the rights acquired must be protected, notwithstanding the irregularity, at least until displaced by some direct proceeding in the Court where the judgment was rendered. *Held*, also, that the Statute was not void because of the indefiniteness of the term "public places of the county;" that the term was intended to designate such places as the court-house, muster grounds, places of holding Justice's Courts, &c. and that the Act referred to publication at the most prominent, and not to all the public places in the county.

[2.] It was sufficient if the title was executed by the administrator *de bonis non*, under the order directed to the first administrator. A special order, directed to the administrator *de bonis non*, was not needed.

Ejectment, in Oglethorpe Superior Court. Tried before Judge ANDREWS, April Term, 1855.

The plaintiff below, and plaintiff in error, traced his title to James Jordan. He then offered a deed from Warren Jordan and Thomas G. Sanford, as administrators *de bonis non* of James Jordan; and as foundation thereto, offered a petition of Willis Jones to the Court of Ordinary of Oglethorpe County, setting forth a bond for titles from James Jordan, and praying an order directing Theophilus Hill, administrator, &c. to make titles; and also an order *nisi* and order absolute, requiring Hill to make the titles; also, the appointment of Jordan and Sanford, as administrators *de bonis non*. Defendant's Counsel objected to the sufficiency of this evidence—

1st. Because the rule *nisi* required its publication " once a

month for three months, in the *Georgia Journal*" only, and not at "the public places of the county."

2d. Because the rule absolute shows that the rule *nisi* was not published at the "public places."

3d. Because the order to Hill to make titles, did not authorize the deed to be made by Jordan and Sanford.

The Court sustained these objections, and this decision is assigned as error.

T. W. THOMAS, for plaintiff in error.

T. R. R. COBB, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] Let it be admitted that the rule *nisi*, which was entered upon the petition of Willis Jones to the Court of Ordinary, (praying an order that the administrator of James Jordan might be directed to make and execute to him titles to the land specified, in pursuance of the bond which had been executed,) required publication to be made in the *Georgia Journal*, and not in the public places of the county, as the Statute prescribes; and that the rule was published in this newspaper, and not in these public places. What then?

Why, in such case, it would seem that the Court of Ordinary irregularly proceeded to order the execution of titles.

But that Court undeniably had jurisdiction of the subject matter. Its proceedings were not void therefore, but simply irregular. The petitioner, relying upon such proceedings, received his title, and there was an acquiescence on the part of all concerned, from that period, viz: sometime in the year 1828, until the commencement of this case in the Court below, a term of more than a quarter of a century. It would be, indeed, a great outrage upon justice, if now the party claiming under this title should be deprived of the rights which it was intended to secure, in this collateral way, because of such a mistake or irregularity.

In such a case, rights acquired must be protected until they are displaced by a direct proceeding in the Court where the order or judgment was rendered, correcting and setting aside such order or judgment.   For a more elaborate consideration of this point, see the case of *Tucker vs. Harris,* (13 *Ga. R.* 1.)

It was argued that the law authorizing this proceeding, by which the execution of titles was directed and completed, is void, because prescribing terms of so vague and indefinite a character as to render compliance with them impossible.

The Act requires publication of the rule "at the public places of the county;" and it is urged, that the term "public places" is so loose and uncertain as not to admit of compliance with the requirement.

We do not feel the force of this observation, but think that by the term "public places," it was intended to designate such public places as the court-house, the places where the Courts of Justices of the Peace are held, the muster grounds, &c. and that the Act does not require the publication to be at all the public places, but at some of the most prominent of such places.

[2.] Another objection was sustained by the Court below, and is now urged before us, viz: that the order directing the administrator, Hill, to execute titles, did not authorize the administrators *de bonis non* to make such titles, but there should have been a separate order for their direction.

This is a mere technical exception, of no substance, and not affecting the merits of the case.   If it were right and proper that the title should be executed, what did it matter whether the titles were made by the administrators *de bonis non*, in pursuance of the order directed to their predecessor, or whether by reason of a special order directed to them? And how exceedingly unjust to the party now relying upon the title it would be, if, after a lapse of twenty-seven years, and this long acquiescence in what was done, he should lose his rights because of this fact!

If we were prepared to say (which we by no means are)

Peterman *vs.* Watkins.

that the title might not have been regularly executed by the administrators *de bonis non*, under the order which had been granted, we would still hesitate, under the influence of the reasons suggested, to sustain this exception as to mere matter of form.

I believe that this Court, from its earliest organization— certainly from the time when I first had the honor of a seat upon its bench, has steadily discountenanced these technical exceptions, which do not affect the merits of the case, and I wonder that Counsel have not wearied in bringing them here.

Whilst the members of this Court have required that forms should be sufficiently accurate, plainly and distinctly to set forth what is meant, and have sometimes sustained exceptions when they were not so, yet, they have set their faces, as flint, against other objections of a technical and hypercritical character.

I hope that they may continue thus to administer the law. That by the breath of their opinions they may scatter the withered leaves of barren forms, the dust of antiquated technicalities, and may frame their judgments upon the firm and lasting foundations of reason and substance.

I cannot utter a better last wish from this bench, for the usefulness and welfare of this Court.*

Let the judgment be reversed.

---

*Though not last of the cases in order upon the calender of this term, in which Judge STARNES delivered the judgment of the Court; yet, this was the last case, in order of argument and judgment, of the cases in which the opinion was pronounced by him, before retiring from the bench.     REPORTER.